## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PETER T.S.,

                              Claimant,

                    v.

LELAND DUDEK,
Acting Commissioner of Social Security,

                              Respondent.

No. 22 C 3984

Magistrate Judge Jeffrey T. Gilbert

### MEMORANDUM OPINION AND ORDER

Peter T.S.[1] ("Claimant") seeks review of the final decision of the Acting Commissioner of the Social Security Administration[2] ("Commissioner"), denying his application for a period of disability and disability insurance benefits. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 6]. After reviewing the record and the parties' arguments, Claimant's Motion for Summary Judgment [ECF No. 11] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 12] is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by his first name and the first initial of his last name.

[2] Leland Dudek was appointed as the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

## BACKGROUND

### I.    Procedural History

On October 22, 2019, Claimant filed an application for a period of disability and disability insurance benefits, alleging a disability beginning September 16, 2019. (R.15). His application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.15). A video hearing was held on November 19, 2021. Claimant appeared and testified by video at the hearing and was represented by counsel. A vocational expert also testified telephonically. (R.15). On December 23, 2021, the ALJ denied Claimant's application for a period of disability and disability insurance benefits, finding him not disabled under the Social Security Act. (R.15-30). The Social Security Administration Appeals Council denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R.1-5). Claimant then filed this lawsuit seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### II.    The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for

determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since September 16, 2019, the alleged onset date. (R.17). At step two, the ALJ found Claimant had the following severe impairments: obesity and obstructive sleep apnea (OSA) in combination, depressive disorder, and post-traumatic stress disorder. (R.17). At step three, the ALJ found that none of Claimant's impairments met any of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. (R.20-21). With respect to Claimant's mental impairments, the ALJ undertook the paragraph B analysis[3] and determined

---

[3] To determine whether a mental impairment meets or equals listing level severity at step three of the sequential analysis, a claimant must prove she meets the severity criteria of

3

that Claimant had moderate limitations in understanding, remembering or applying information, in interacting with others, and in concentrating, persisting or maintaining pace, and mild limitations in adapting or managing oneself. (R.21). Before step four, the ALJ determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stair; can occasionally balance, stop, kneel, crouch and crawl. The claimant can push and/or pull bilaterally with the lower extremities frequently (food controls). The claimant should avoid hazards such as unprotected heights or dangerous moving machinery. The claimant can engage in unskilled work and can learn, understand, remember, and carry out simple work instructions; can make simple work-related decisions; can tolerate occasional brief and superficial interactions (*sic*) the general public; avoid work outdoor and crowded environment (*sic*); can occasionally work with coworkers, largely working with things not people, no team or tandem work; routine work environment with no more than occasional changes in the work; can tolerate the typical unskilled type of supervisory interactions (supervisor or designee instructs on the work during the introductory period and then following the introduction, tolerate occasional work-related interactions with the supervisor); and is able to sustain the necessary attention or concentration in two-hour increments throughout the typical workday.

(R.22). At step four, the ALJ found that Claimant was not able to perform his previous work as an industrial truck operator, shipping clerk, store owner/manager, and general clerk. (R.29). At step five, the ALJ found there were other jobs in the national

---

either paragraph B or C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. To satisfy the paragraph B criteria, a claimant must demonstrate an "[e]xtreme limitation of one, or marked limitation of two" of four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. *Id.* To evaluate these four areas, ALJs will investigate how an impairment interferes with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis, as well as the quality and level of overall functional performance, any episodic limitations, the amount of supervision or assistance required, and the settings in which a claimant is able to function. 20 C.F.R. § 404. 1520a(c)(2).

economy Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of routing clerk, marking clerk, and collator operator. (R.29-30). Based on these findings, the ALJ held that Claimant was not disabled. (R.30).

## DISCUSSION

## I.  Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision, therefore, is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category

of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). More specifically, the Seventh Circuit stated:

> All we required is that ALJs provide an explanation for how the evidence leads to their conclusions that is "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." … At times, we have put this in the shorthand terms of saying an ALJ needs to provide a "logical bridge from the evidence to his conclusion."

*Id.* at 1054 (citations omitted). When conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.") (internal quotations and citation omitted). The court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

## II. Analysis

Claimant argues the ALJ's decision cannot stand in this case because: (1) the ALJ's RFC assessment is not supported by substantial evidence; (2) the ALJ

committed legal error by failing to recognize Claimant's borderline intellectual functioning as a severe impairment; and (3) the ALJ committed legal error in assessing a treating psychiatrist's opinion. As to Claimant's first argument, Claimant contends that the RFC assessment is arbitrary and not supported by substantial evidence because the ALJ failed to explain how the record evidence supported her conclusions related to Claimant's differing ability to tolerate supervisor interaction in different work contexts. Claimant's Memorandum in Support of Motion for Summary Judgment [ECF No. 11] ("Motion"). The Court agrees with Claimant on this first issue.

The ALJ crafted an RFC that included multiple mental limitations, including several related to Claimant's limitations in interacting with others:

> The claimant can engage in unskilled work and can learn, understand, remember, and carry out simple work instructions; can make simple work-related decisions; can tolerate occasional brief and superficial interactions (*sic*) the general public; avoid work outdoor and crowded environment (*sic*); can occasionally work with coworkers, largely working with things not people, no team or tandem work; routine work environment with no more than occasional changes in the work; can tolerate the typical unskilled type of supervisory interactions (supervisor or designee instructs on the work during the introductory period and then following the introduction, tolerate occasional work-related interactions with the supervisor); and is able to sustain the necessary attention or concentration in two-hour increments throughout the typical workday.

(R.22). Claimant argues a portion of the ALJ's RFC was arbitrary and not supported by substantial evidence because "[t]he ALJ found that [Claimant] had different functional limitations during different parts of a job." Motion [ECF No. 11] at 7. Specifically, Claimant says the ALJ did not explain how he "could have more than

occasional interaction with a supervisor during a job's introductory period, but not thereafter." [*Id.*] at 7-8.

The Commissioner does not appear to dispute the RFC contemplates Claimant's ability to engage in different levels of interaction with supervisors during an introductory as compared to ordinary work setting. Rather, the Commissioner acknowledges Claimant's "argument may have superficial appeal" but contends "it is ultimately without merit" because during the hearing "[t]he ALJ tackled the probationary period head-on, asking the VE whether a claimant who could sustain contact with supervisors during an introductory period but who could then have no more than occasional contact thereafter could perform work in the national economy." Defendant's Memorandum in Support of Motion for Summary Judgment [ECF No. 12] ("Response") at 5.

The Commissioner's Response misses the mark. Claimant argues the ALJ did not identify evidence to support Claimant's ability to engage in a different level of interaction with a supervisor during the introductory or training period of a job as compared to during a typical workday. Motion [ECF No. 11] at 7-8. By contrast, the Commissioner's Response focuses on the vocational expert's testimony during the hearing about available work in the national economy for an individual who the expert was *told to assume* was only limited to occasional contact with supervisors after the introductory period but not during the introductory period. The vocational expert's testimony established the SVP-2 unskilled jobs the ALJ ultimately determined Claimant would be able to perform would require up to a 30-day

introductory period. (R.76-77). Although the Commissioner asserts "the ALJ explored [Claimant's] abilities during an introductory period, and thereafter," the Commissioner does not identify any evidence identified by the ALJ that supports Claimant's differing abilities in these two workplace contexts. Response [ECF No. 12] at 6. The ALJ did not identify such evidence about Claimant's differing abilities while questioning the vocational expert at the hearing, nor did the ALJ ask the vocational expert about the extent of supervisor interactions required during introductory periods for the jobs in question. (R.76-77). Instead, the ALJ presented the vocational expert with a hypothetical that assumed the individual was able to engage in a different level of interaction with supervisors during an introductory period of employment, interaction that was apparently more extensive or even unrestricted as compared to occasional interaction with supervisors on an ongoing basis on the job. For these reasons, the Commissioner's arguments do not address the salient issue.[4]

---

[4] The ALJ's opinion relied on the vocational expert's testimony to conclude Claimant would be to perform the requirements of representative occupations including routing clerk, marking clerk, and collator operator. (R.29-30). The ALJ's questioning of the vocational expert on the issue of the introductory period was as follows:

> Q: Further in this hypothetical I'll indicate that the individual following the introductory period would be able to tolerate occasional work-related interactions with supervisors. I'm just saying that because additionally with the supervisor, they're going to be introducing the work tasks, but after the introductory period. Occasional work-related interactions thereafter. Does that allow – if you add that on, does that change your testimony about the jobs that you indicated early.

> A: No, Your Honor, no changes, no diminution in numbers.

> Q: All right, very good. What if – let *(sic)* ask you this, if an individual was having trouble remembering the work tasks and needed to have some reminders to execute the work or reminders to stay on task to complete the work, how would that impact the ability to perform those jobs?

The Court concludes that substantial evidence did not support the distinction in the RFC between Claimant's abilities to interact with supervisors during an unskilled job's introductory period and thereafter during the ordinary course of employment. In assessing Claimant's functional mental limitations at Step Two and Step Three, the ALJ found Claimant to have a moderate limitation in interacting with others. (R.21). The ALJ noted Claimant lived with family and was able to spend time with family and friends, but also that he "reportedly stayed home because he did not have patience with others and became annoyed and flustered easily." (*Id.*) The ALJ noted during examinations, however, Claimant was reported to be calm, related and cooperative. (*Id.*) The ALJ also found Claimant had a moderate limitation in understanding, remembering or applying information noting Claimant "reported having a short memory and difficulty following instructions" and a moderate limitation in concentrating, persisting or maintaining pace, noting Claimant "could follow spoken instructions well and written ones 'depending on his mood'" and "could pay attention 10 minutes and did not finish tasks he started." (*Id.*) The ALJ observed

---

A: Your Honor, if that took place after the SVP period and it continued on an ongoing basis, it would be work preclusive.

Q: Okay, when you say SVP period, I assume you mean the introductory period? What they're learning and getting up to speed on the tasks?

A: Yes, the Specific Vocational Preparation, Your Honor. The jobs I cited were SVP-2, so that would be a 30-day period, up to a 30-day period.

Q: Up to 30 days, all right. So, after that period of time, if still needing some sort of reminders, that individual would end up losing their jobs, right?

A: Yes.

(R.76-77). Claimant says the vocational expert also testified "[i]f on an ongoing basis, a worker was unable to accept needed instruction they would be unemployable." Motion [ECF No. 11] at 4.

Claimant was able to engage in daily activities "that require some degree of concentration" and that Claimant was reported to be "be alert and attentive" on other occasions. (*Id.*)

In crafting the RFC, the ALJ found persuasive the state agency psychological consultant reports finding Claimant had moderate limitations in understanding, remembering or applying information, interacting with others, and concentrating, persisting or maintaining pace, and mild limitations in adopting or caring for oneself. (R.26). The ALJ noted "[t]hese doctors opined the [C]laimant . . . could interact with others sufficiently in a work setting with reduced social demands, but would do best in a work setting where employment related social interactions were infrequent, brief, and largely task-specific (vs. collaborative). . . ." (R.26). The ALJ noted "[t]hese doctors supported their findings with an explanation and review of the evidence, and their findings are consistent with the evidence of record. . . ." (R.26). The ALJ also found "mental status examinations are consistent with the mental limitations in the [RFC]," noting Claimant was pleasant and cooperative during examinations, but had an anxious and/or frustrated mood. (R.24-25). The ALJ found "[C]laimant's daily activities are also consistent with the limitations in the [RFC]," pointing to his ability "to prepare meals, perform some household chores such as cooking, cleaning, and watering plants," to "drive, shop and manage his finances," and to bathe and dress himself. (R.25).

Specifically with respect to interactions with other people in the workplace, the ALJ explained the RFC limitations that Claimant "can tolerate occasional brief and

superficial interactions with the general public, occasionally work with coworkers largely working with things not people and no tandem or team work, and can tolerate typical unskilled type of supervisory interactions (supervisor or designee instructs on the work during the introductory period and then following the introductory period, tolerate occasional work related interactions with the supervisors)" were "secondary to his reports of that (*sic*) he did not like to be in crowds or people and his reports of becoming frustrated, irritated, and angry quicker (*sic*)," citing Claimant's Function Reports from January 13, 2020 (Exhibit 4E) and January 5, 2021 (Exhibit 17E). (R.28).[5]

As the Commissioner notes, the ALJ included "ten mental RFC restrictions," Response [ECF No. 12] at 2, which suggests the ALJ found a significant number of mental limitations to be warranted. Read as a whole, the RFC generally limits Claimant to no more than "occasional" interactions with other people in the workplace, including supervisors and coworkers, and no more than "occasional brief and superficial interactions" with the general public. (R.22 (Claimant could tolerate "occasional work-related interactions with the supervisor," "occasional brief and superficial interactions (*sic*) the general public," and "can occasionally work with coworkers, largely working with things not people, no team or tandem work.")). "Occasionally" means "very little up to one-third of the time." *See* SSR 96-9p,

---

[5] In the January 2020 Function Report, Claimant reported he became "very irritated and frustrated with my boss because I feel like they don't understand my pain. Sometimes I am annoyed with my kids['] teachers also" and "I get angry quickly, things that never use to bother me before has now become very annoying." (R.273 (Exhibit 4E at p. 10)). In Claimant's January 5, 2021 Function Report (Exhibit 17E) Claimant reported "I like to be alone" and that "I do not want to be in crowds of people." (R.28; see also R.341-353).

available at 1996 WL 374185 *3. These RFC findings are supported by the evidence identified and relied upon in the ALJ's opinion as supporting these mental limitations, including Claimant's Function Reports as well as the state agency psychologist opinion issued on reconsideration by Dr. Gayle Williamson. (R.26). While the RFC distinguishes Claimant's ability to interact with supervisors or their designees during an introductory period, however, there is no evidence identified by the ALJ to support this distinction. The ALJ does not explain why Claimant would be able to engage with supervisors in a different manner during an introductory period when compared to the limitations on Claimant's ability to engage with supervisors otherwise while working, as well as more broadly with respect to coworkers and the public. The ALJ simply asserts this as fact with nothing in the record to support it other than her say-so.

The law is clear that the ALJ must "articulate in a rational manner the reasons for [her] assessment of a claimant's residual functional capacity," *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009), in a way that builds "an accurate and logical bridge from the evidence to the conclusion," *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). *See also Jarnutowski v. Kijakazi*, 48 F.4th 769, 776–77 (7th Cir. 2022) (holding remand warranted where ALJ failed to explain basis for limitations included in RFC in manner that allowed reviewing court to discern what evidence the ALJ used to reach that conclusion or to follow the ALJ's reasoning); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (holding an ALJ's failure to explain how he or she arrived at RFC conclusions warrants reversal). Remand is appropriate here

because the RFC draws a distinction between Claimant's abilities during a training period as compared to afterwards, yet the ALJ does not identify evidence supporting such a distinction. *See Rosa L. v. Berryhill*, 2019 WL 10446863, at *7 (N.D. Ill. Jan. 31, 2019) ("In his mental RFC assessment, the ALJ limited the need for frequent reminders to an 'initial training/probationary period' but did not provide any explanation or support in the record for this limitation. The ALJ thus lacked the requisite logical bridge to support the mental RFC.") (internal citations omitted). *cf. Vinnie C. v. O'Malley*, 2024 WL 4240444, at *2–4 (N.D. Ill. Sept. 19, 2024) (noting "[i]t's true that the ALJ found that plaintiff was not as limited as she claimed, but he also found that her moderate limitations in interacting with others required that she have no more than brief, superficial interactions with coworkers and supervisors. Nowhere did the ALJ explain why–or whether–the same restriction was not required for training periods."). This result is unfortunate assuming the ALJ could have explained her thinking in this area but did not take the time to do so, but it is the right result on review by this Court.[6]

---

[6] Courts in other jurisdictions have similarly remanded where an RFC distinction between a claimant's limitations during and after a training period was not adequately explained or supported by substantial evidence in the ALJ's opinion. *See, e.g., Cameron M. v. Acting Comm'r of Soc. Sec.*, 2025 WL 726646, at *2–5 (W.D. Wash. Mar. 6, 2025) (discussing *Leitz v. Kijakazi*, 2023 WL 4342114 (9th Cir. July 5, 2023), an unpublished Ninth Circuit decision) ("The Ninth Circuit determined that the 'training-period caveat' was not supported by the record" as "there was no evidence that the plaintiff's mental problems were 'somehow alleviated during training periods because they are less likely to include supervisor interactions than other work periods, or that employers would be willing to tolerate her limitations during training periods.'"); *Yazmin Q. v. O'Malley*, 2024 WL 4567277, at *5–6 (E.D. Pa. Oct. 24, 2024) (remanding where ALJ failed to provide substantial evidence to support "inconsistent social limitations" with respect to training period; "[o]n its face, the part of the RFC that Plaintiff challenges is illogical. To wit, how could it be that, when the Plaintiff commences a job and requires 30 days of training, she can frequently interact with strangers and yet, after the 30 days elapse, be only able to tolerate occasional interaction

This is consistent with decisions to remand in other cases where an RFC's limitations are arbitrary or not supported by specific record evidence. *See*, *e.g.*, *Sanchez v. Kijakazi*, 2023 WL 2612481, at *2–3 (N.D. Ill. Mar. 23, 2023) (remanding where "ALJ crafted a very specific RFC limitation based on her own subjective view of plaintiff's [impairment], without tying it to specific record evidence") ("in crafting the RFC limitation, the ALJ appears to have arbitrarily reduced plaintiff's asserted impairment to a degree the ALJ found to be valid" and that "reduction" was "arbitrary because [the ALJ] did not cite to any evidence that would support the very specific RFC limitation she crafted"); *Nanet R. v. Kijakazi*, 2023 WL 3479181, at *4 (N.D. Ill. May 16, 2023) ("Because the ALJ did not logically connect the RFC limitation to medical evidence in the record, the Court finds the limitation to be arbitrary."); *Peissig v. Saul*, 2021 WL 1116477, at *2–3 (E.D. Wis. Mar. 24, 2021) (remanding where ALJ's questioning of vocational expert "simply assumed" claimant's abilities to sit/stand with 10% off task limitation in the hypothetical posed to the expert but "did

---

with those same people? The ALJ never explains how he arrived at this facially illogical decision."); *Clarissa W.-J. v. O'Malley*, 2024 WL 3541932, at *18–20 (D. Minn. July 10, 2024), *report and recommendation adopted*, 2024 WL 3540855 (D. Minn. July 25, 2024) ("the ALJ did not articulate any reason for the distinction in Plaintiff's capacity to interact during a 30-day training period and outside of that period . . . the Court cannot engage in post hoc rationalizations to support that conclusion"); *Clampit v. Comm'r of Soc. Sec.*, 2023 WL 2958158, at *6 (N.D. Ohio Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 2956613 (N.D. Ohio Apr. 14, 2023) (collecting cases: "other courts have reversed where, as here, the ALJ does not provide an explanation for making a distinction in abilities before and after a training period"); *S.B. v. Comm'r of Soc. Sec.*, 2022 WL 16701880, at *2–3 (D.N.J. Feb. 15, 2022) ("the ALJ's finding that Plaintiff can handle a short-lived period of interaction with supervisors for a training period is not explained . . . At most, the ALJ appears to suggest that Plaintiff's capacity to have good interactions at medical appointments is sufficient evidence that she can handle frequent social interaction with supervisors over a thirty-day training period. We do not see the connection.").

not explain why the evidence supported a finding that [claimant] would not be off task more than ten percent of the workday when transitioning to sitting or standing").

The Court acknowledges some courts in this district have found similar RFCs drawing a distinction between a claimant's abilities to interact during a training period as compared to during the ordinary workday to be adequately supported. *See Reggie N. v. Kijakazi*, 2023 WL 5277877, at *3–4 (N.D. Ill. Aug. 16, 2023); *Mario G. v. O'Malley*, 2024 WL 916234, at *7 (N.D. Ill. Mar. 4, 2024) (concluding the fact that "RFC did not include any restrictions on interaction during the training period was neither improper nor 'unusual'"). It is certainly possible that, where properly supported, an RFC could draw a distinction between a claimant's abilities during an introductory, probationary, or training period, and the claimant's abilities to perform job requirements on a regular and ongoing basis. *See Bernard L.*, 2020 WL 7027637, at *2–6 (acknowledging "the ALJ's ability, in an appropriate case, to craft an RFC that distinguishes between the job itself and the job's training period"); *Walker v. O'Malley*, 2024 WL 1354604, at *5 (S.D. Ga. Mar. 29, 2024) ("If the ALJ in this case had included a similar 'exception' for a learning period in Plaintiff's RFC, and that exception was supported by substantial evidence, the ALJ's step five determination would be sound."); *Clampit v. Comm'r of Soc. Sec.*, 2023 WL 2958158, at *6 (N.D. Ohio Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 2956613 (N.D. Ohio Apr. 14, 2023) ("Nothing forbids the ALJ from making a distinction before and after a training period. However, the ALJ's opinion must 'permit this reviewing court to follow the 'reasoning and treatment of' [medical] opinions.'"). An RFC analysis,

however, is inherently case specific and must be tied to evidence about that claimant's limitations. The issue presented here is not whether the RFC articulated by the ALJ could ever be sustained but rather whether the RFC in this case is supported by substantial evidence. For the reasons explained above, the Court concludes that it is not.

In the Court's view, the circumstances here warrant remand because the ALJ fails to identify evidence to support the difference in Claimant's ability to interact with others that is included in the RFC. The ALJ found persuasive a medical opinion concluding Claimant had moderate limitations in interacting with others and therefore should be limited to a work setting where employment-related social interactions were infrequent and brief, and the ALJ mirrored those restrictions in the RFC with respect to Claimant's interactions with the general public, coworkers and supervisors. Yet the ALJ carved out, without explanation, Claimant's abilities to interact with supervisors during an introductory period of employment. In these circumstances, the RFC is not supported by substantial evidence because the Court is left to speculate as to the ALJ's reasoning for drawing this distinction.

Turning to the Commissioner's remaining arguments on this issue, the Commissioner says the RFC does not pertain to an introductory period because it is not the "ordinary work setting" that is expected on a regular and continuing basis, but this argument is contrary to the ALJ's analysis, as she included the introductory period in the RFC and asked the vocational expert about it. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we

do not uphold an ALJ's decision by giving it different ground to stand upon." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). The Commissioner cannot change the record on this point on appeal and prevail on that basis.

Claimant also cites two cases for the proposition that "[t]he ability to complete a probationary period is tantamount to the ability to keep a job" which "is a necessary prerequisite to the ability to engage in substantial gainful activity." Motion [ECF No. 11] at 8-9 (citing *Sczepanski v. Saul*, 946 F.3d 152, 161 (2d Cir. 2020) and *Bernard L. v. Saul*, 2020 WL 7027637, at *3 (N.D. Ill. Nov. 30, 2020)).[7] The Commissioner does not dispute these cases stand for this general proposition, but says the cases involved a different situation where the ALJ failed to reconcile a vocational expert's testimony that certain limitations prevented completion of job requirements during a training period, while here the ALJ expressly asked the vocational expert about hypothetical abilities during an introductory period. Response [ECF No. 12] at 5. As discussed

---

[7] While the issue in *Bernard L.* involved different circumstances, the case is still relevant here. In *Bernard L.*, the RFC restriction at issue, occasional interaction with supervisors, was substantially similar to the RFC restriction here, and the vocational expert testified that a restriction to occasional interaction with supervisors would preclude the ability to complete a 30-day training period for an SVP-2 unskilled job, the same job category at issue in this case. The reasoning in *Bernard L.* suggests the ALJ should have either provided reasons why Claimant would have been able to have more than occasional interactions with supervisors during the introductory period of an SVP-2 job, or alternatively asked the vocational expert whether the inability to engage in more than occasional interactions with supervisors would preclude the ability to work those jobs. *See also Vinnie C.*, 2024 WL 4240444, at *2–4 ("there are two possible interpretations of plaintiff's RFC as far as her ability to complete a training period: Either plaintiff's social-interaction limitation would exist during the training period, in which case plaintiff could not perform at least two of the jobs at issue; or plaintiff's social-interaction limitation would not exist during a training period, a finding that the ALJ never actually made and that would be inconsistent (absent any explanation) with his decision that plaintiff's moderate limitations in interacting with others required that her dealings with coworkers and supervisors be limited.").

above, however, Claimant does not dispute the vocational expert was asked a hypothetical that included distinct RFC limitations applicable to an introductory period. His argument, which the Court finds persuasive, is rather that the ALJ did not support the basis for that RFC limitation.[8]

The Commissioner also argues that finding that a limitation in interacting with supervisors precludes completion of a job training period would be tantamount to requiring a disability finding in all cases where such a limitation exists, citing a Missouri district court decision, *Hemby v. Berryhill*, 2017 WL 951785, at *11 (E.D. Mo. Mar. 10, 2017). As the Commissioner acknowledges, the Seventh Circuit has not addressed this issue. *See* Response [ECF No. 12] at 6 ("Courts outside of the Seventh Circuit have agreed with this line of reasoning."); *see*, *e.g.*, *Sandy C. v. Kijakazi*, 2023 WL 2133835, at *3–5 (S.D. Ind. Feb. 21, 2023) ("The Seventh Circuit has not yet addressed the effect a probationary period has on a claimant's ability to sustain employment. Several district courts have considered the issue, however, and held that if a claimant is unable to successfully complete a probationary period, jobs that require completion of the same are unavailable to them."). Courts in this district, however, have rejected similar arguments, reasoning that analyzing whether a claimant's particular limitations preclude employment is the "very purpose of the disability inquiry." *See Bernard L.*, 2020 WL 7027637, at *2–6 ("the Court 'rejects the

---

[8] The Commissioner's citation to *Dean v. Berryhill*, 2019 WL 1170479, at *5 (E.D. Cal. Mar. 13, 2019) is inapposite for similar reasons. Unlike in *Dean*, where the court concluded the vocational expert's testimony left open the possibility that more than occasional contact with a supervisor might not necessarily be required during a training period for the jobs at issue, here, the vocational expert was not asked that question because the ALJ posed a hypothetical that appeared to exclude the need for any such limitations during a training period.

proposition that it would be 'untenable' to require ALJs to arrive at a finding of disability whenever the claimant's limitations necessitate that finding; indeed, that is the very purpose of the disability inquiry and the only appropriate result.'") (quoting *Kenneth P. v. Saul*, 2019 WL 6463449, at *6 (S.D. Ind. Dec. 2, 2019)). In any event, the Court need not resolve this broader question here, as the only issue before the Court now is whether the ALJ's RFC finding as to Claimant's limitations during and after a job's introductory period was supported by substantial evidence.

The Court is mindful of the deference that is owed to an ALJ's decision under the substantial evidence standard and that a reviewing court should not substitute its judgment for that of the ALJ's by reweighing the evidence. Although this standard is generous, it is not entirely uncritical. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In this case, the Court is not persuaded by the Commissioner's arguments and agrees with Claimant that the ALJ failed to explain the basis for including a distinction in the RFC for Claimant's abilities during an introductory period for a job. This does not mean the Court agrees with Claimant that he is disabled within the meaning of the applicable law and that he cannot work. There simply is not enough of an explanation in the record (*i.e.*, the logical bridge between the evidence and the ALJ's ultimate conclusions) to be able to conclude that the ALJ's decision is supported by substantial evidence. Therefore, remand is required for the reasons discussed above.

Claimant also raises additional arguments challenging the ALJ's opinion, Motion [ECF No. 11], however, because this case is being remanded for the reasons

discussed above, the Court declines to address those arguments and, therefore, does not express any opinion on the decision to be made on remand. Claimant's counsel "should raise all issues argued on appeal with the ALJ on remand" both in a pre-hearing brief and at the administrative hearing to avoid any waiver if the case is again appealed to this Court. *See Thomas H. v. Kijakazi*, 2023 WL 6388145, at *4 (N.D. Ill. Sept. 29, 2023).

## CONCLUSION

Accordingly, for all the reasons set forth above, Claimant's Motion for Summary Judgment [ECF No. 11] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 12] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 31, 2025